UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**VICTOR OKOYE and OGOR W. OKOYE,**  )
   **Plaintiffs**                  )
     v.                   )
                                    )   **CIVIL ACTION NO.:**
**THE BANK OF NEW YORK MELLON f/k/a** )
**THE BANK OF NEW YORK, AS TRUSTEE**  )
**FOR THE HOLDERS OF THE GE-WMC**     )
**ASSET-BACKED PASS-THROUGH**         )   <u>**10-11563-DPW**</u>
**CERTIFICATES, SERIES 2005-2, WMC**  )
**MORTGAGE CORPORATION, MORTGAGE**    )
**ELECTRONIC REGISTRATION SYSTEMS,**  )
**INC., AND LITTON LOANS SERVICING, LP.,** )
   **Defendants**                  )
_____)

## <u>FIRST AMENDED COMPLAINT</u>

NOW COME Plaintiffs Victor Okoye ("Victor") and Ogor W. Okoye ("Ogor") (collectively "Plaintiffs"), by and through their attorney, and bring this First Amended Complaint against Defendants Bank of New York Mellon ("BNY"), WMC Mortgage Corporation ("WMC"), Mortgage Electronic Registration Systems, Inc. ("MERS") and Litton Loan Servicing, LP("Litton") (collectively "Defendants"). In support of this First Amended Complaint, Plaintiffs allege as follows:

### PARTIES

1. Victor Okoye ("Victor") is a resident and citizen of the Commonwealth of Massachusetts with as usual place of abode at 21 Orchard Street, Saugus, Massachusetts.

2. Ogor W. Okoye ("Ogor") is a resident and citizen of the Commonwealth of Massachusetts with as usual place of abode at 21 Orchard Street, Saugus, Massachusetts.

3. Upon information and belief, Bank of New York Mellon is a Delaware corporation with a principal place of business located at One Wall Street, 21st Floor, New York City, New York, 10286.

4. Upon information and belief, WMC Mortgage Corporation is a California corporation with a principal place of business located at 3100 Thornton Avenue, Burbank, California 91504.

5. Upon information and belief, Mortgage Electronic Registration Systems, Inc. is a California corporation Delaware corporation with a principal place of business located at 1818 Library Street, Suite 300, Reston, Virginia 20190.

6. Upon information and belief, Litton Loan Servicing is a Delaware limited partnership with a principal place of business located at 4828 Loop Central Drive, Suite 600, Houston, Texas 77056.

## JURISDICTION AND VENUE

7. Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1391(a)(2), respectively.

## FACTS

8. Plaintiffs incorporate by reference as if stated fully herein Paragraphs 1-7.

9. Plaintiffs refinanced the real property located at 21 Orchard Street, Saugus, Massachusetts ("Property") by securing a fixed rate loan through the execution of a

Mortgage and Note to Option One Mortgage, Inc. for three hundred thousand twenty-four dollars and zero cents ($324,000.00).

10. On or about October 4, 2005, Plaintiffs refinanced the loan with WMC for four hundred thousand nine hundred dollars ($409,000.00).

11. At the time of closing, WMC did not supply to Plaintiffs any closing documents, including Truth in Lending Act ("TILA") disclosures, HUD Settlement forms, HOEPA notices, Good Faith Estimate of Closing booklet, and copies of the mortgage loan or note.

12. Plaintiffs, on or about October 4, 2005, did not received the cash to borrower WMC purported to pay to borrower, the total amount of which was seventy-one thousand five hundred twenty-eight dollars and twenty-three cents ($71,528.23) as stated on the HUD Settlement Statement. Plaintiffs were not aware of this supposed cash payment until November 4, 2010 because WMC failed to provide any closing documents to Plaintiffs at the time of closing or at a reasonable time after. (See Exhibit B).

13. On or about November 14, 2005, Option One Mortgage, who had been the servicer of the previous mortgage loan, notified Plaintiffs that beginning on November 29, 2005 Litton would be servicing the loan and that all payments were to be sent to Litton.

14. Unbeknownst to Plaintiffs, Litton had been deliberately posting payments as late since the inception of the loan servicing starting in January 2006, in order to effectuate a default on the part of the borrower. Plaintiffs only became aware of these charges, on November 29, 2010 despite numerous requests for accountings of this loan by the borrower. (See Exhibit C).

15. Plaintiffs, who maintained insurance payments and who were not made aware of any escrowing of the loan, were also not aware that Litton had created an escrow account and claimed that it had been making insurance and tax payments since 2006. Plaintiffs only became aware of these supposed payments on December 1, 2010. (See Exhibit D).

16. Litton continually forced placed insurance on borrower even though borrower maintained a home owner's insurance policy and provided proof of it to Litton. (See Exhibit D).

17. Litton did not supply an escrow accounting and/or a breakdown of the escrow account for the five years that it has serviced this loan. It was not until December 1, 2010 that Plaintiffs received a print out from Litton purporting to show payments received on the loan.

18. On or about March 2, 2006, five months after the mortgage closing took palce, WMC mailed to Plaintiffs a new Note with new terms. WMC claimed that the original Note from October 4, 2005 contained terms which made Plaintiffs' loan a forty-year loan and not a thirty-year loan. WMC unilaterally changed the terms of the Note to reflect a thirty-year Note with a balloon payment due at the end of the thirty-year term. They purported to have authority to make such change pursuant to a power of attorney given by Victor at closing. No power of attorney has been shown to exist and such power of attorney would not authorize a lender to change the terms of a Note and/or mortgage loan unilaterally. (See Exhibit E).

19. Borrower did not execute any power of attorney document or the purported new note with the new terms.

20. Upon information and belief, BNY offered a Note on November 4, 2010, which Victor supposedly initialed, purporting to be a copy of the original Adjustable Note for the Property. Victor denies that these initials are his markings. Plaintiffs have never before seen this document and all other documents associated with the closing contain the initials of both Plaintiffs. (See Exhibit F).

21. On or about June 19, 2009, Litton mailed to Plaintiffs a Notice of Default and Intent to Accelerate. This Notice stated that BNY was the owner of the Note and the party authorizing Litton to send such a threat. However, BNY had no assignment of said loan or note and both Litton and BNY were acting and threatening to foreclose without authority to do so. (See Exhibit G).

22. In a letter dated October 9, 2009, Litton notified Victor that there would be an interest rate change and payment adjustment starting on December 1, 2009. The new payment amount was quoted as $4,246.41. Litton acknowledged in said letter that it was the first change in interest rate and monthly payment since the inception of the loan. Monthly statements sent to Borrower prior to this date confirmed that this new payment had long been in effect prior to the notice letter was sent. Victor was later informed by Litton that a rate change had occurred the previous year; however, this was the first notice ever received by Plaintiffs.

23. On or about October 23, 2009 BNY recorded an assignment of the mortgage which was executed on and became effective October 23, 2009. (See Exhibit H).

24. On or about November 12, 2009, Victor spoke with a Litton representative, Stanley Williams, who informed Victor that Victor's current amount due on the loan totaled around $59,000.00. Victor disagreed with this figure and requested an accounting of

the loan knowing that he only missed a couple of payments. Litton refused to show how Litton came up with this amount despite repeated demands from the borrower.

25. On or about November 13, 2009, Victor sent a qualified written request ("QWR") through facsimile to Litton requesting an investigation into amounts and figures due and owing. Litton also advised Victor to apply for a loan modification, which Victor did. (See Exhibit I).

26. On or about November 17, 2009, Litton sent to Victor a letter stating that Litton would not offer an alternative workout program.(See Exhibit J).

27. On or about November 18, 2009, Litton sent to Victor a response to Victor's QWR stating that Litton would need 60 days in order to assist Victor. They also acknowledged receiving the loam modification packet and advised Victor to continue making his monthly payments. (See Exhibit K).

28. Litton accepted Victor's October 2009 payment but rejected his November 2009 payment even though Litton advised him to continue making his monthly payment.

29. In a letter dated November 23, 2009, Litton returned the monthly payment check Victor had mailed to Litton. Litton claimed that the monies tendered were not enough to pay the full amount due. However, Victor did not know what the full amount due was and questioned the amount given to him by Litton as incorrect and had requested by way of QWR to have the figures investigated on November 13, 2009.

30. In December of 2009, Victor sent out to Litton yet another formal letter of dispute regarding the inflated arrearage amount and got no response from Litton. Every

subsequent follow up call to Litton regarding the arrearage amount owed resulted in yet another unverified amount being quoted by Litton.

31. On or about December 2, 2009 Ogor sent via certified mail another letter to Litton echoing their frustration regarding Litton's failure to act in good faith, especially its failure to provide the requested breakdown and reinstatement quote and their numerous unsuccessful attempts to contact Litton. (See Exhibit L).

32. In a Litton letter dated December 2, 2009, Litton stated that it denied the loan modification request for one of their generic reasons: "Financial information [Victor] provided, along with other various factors…" (See Exhibit M).

33. In a letter dated December 11, 2009, Litton gave yet another reason for the denial of the request for loan modification. This time, it was denied because "the loan does not meet the guidelines provided by the investor." This denial claim differs from the denial claim made nine days prior. This letter also stated that the total amount owed was $48,155.71, approximately $10,000.00 less that what was claimed owed on November 12, 2009. As Victor's payments were returned, upon information and belief, Litton has no idea what is owed and would not produce documentation to corroborate the amounts claimed due and owing. The amount could not have gone down in one month time given that Victor's payment for that month was returned to him by Litton. (See Exhibit N).

34. In response to Ogor's December 2, 2009, Litton sent by mail a letter dated December 31, 2009 (received on January 8, 2010),in which was stated that the letter enclosed a reinstatement quote for the amount due and owing through January 31, 2009. No reinstatement quote was indeed attached to the letter. (See Exhibit O).

35. In its December 31, 2009 letter to Ogor, Litton maintained that the application for loan modification was denied under the terms of the Home Affordable Modification Program ("HAMP") because the loan did not meet the criteria or eligibility requirement under HAMP. At this time, Litton had denied Victor's request for a loan modification for three different reasons, all without any specific details. (See Exhibit O).

36. In or around January, 2010, Plaintiffs received a Form 1098 from Litton stating that the ending balance of principal due and owing on the loan was $403,021.47. (See Exhibit P).

37. On or around January 8, 2010, BNY on behalf of Litton Loan filed a Service members' complaint at the Land Court in Boston.

38. On or about January 11, 2010, American Residential Law Group, on behalf on Plaintiffs, sent to Litton another QWR. On or about January 27, 2010, Litton responded with a letter purporting to include nine enclosures; no enclosures were ever enclosed which was a theme of Litton's responses. (See Exhibit Q).

39. On or about February 1, 2010, Ogor sent yet another QWR through certified mail to Litton advising that neither the reinstatement quote nor the breakdown of the arrearage amount was enclosed as was claimed in their January 27, 2010 letter. Ogor requested that this reinstatement quote be resent; Plaintiffs have not received a reinstatement quote to date. (See Exhibit R).

40. On or about February 14, 2010, Plaintiffs were forced to send another QWR to Litton because Litton failed again to provide any information requested. Plaintiffs were met with the same treatment; no information was ever sent. (See Exhibit S).

41. On or about February 19, 2010, Ogor filed an objection to any foreclosure proceedings within the Massachusetts Land Court, Case No.: 09MISC41562.
42. On or about February 2010, Victor was advised that Litton had mailed him a loan modification packet under HAMP which had the effect of modifying the terms of the mortgage and averting a foreclosure. In fact, no document was ever received by Victor.
43. Following numerous phone calls to Litton from Plaintiffs insisting that weeks have passed since Litton purportedly sent the modification packet and the deadline for acceptance of the modification was fast approaching, Litton faxed over the packet to Plaintiffs on or about February 25, 2010.
44. Litton offered Victor the HAMP modification via fax on February 25, 2010. The modification offer which requested several documents to be received by Litton by March 1, 2010. The documents that was requested to be sent back by the borrower included; two(2) copies of the Trial Period Plan signed by the borrower, the first month's payment, and a hardship affidavit.
45. Victor signed and sent back all of the requested documents before March 1, 2010 including the first month's payment. Plaintiffs contacted Litton by telephone regarding the sent documents and payments, and Litton acknowledged receiving all of the requested documents. Plaintiff complied with all of the terms and conditions of the HAMP trial period.
46. The trial period plan was effective from March 1, 2010 until May 1, 2010 and required that the Plaintiffs make monthly payments of $2,481.02. This offer also assured Plaintiffs that if they complied with the plan, Litton will provide the Plaintiffs

with a "HAMP Modification Agreement" which would amend and supplement the original Mortgage on the property.

47. On or around April 9, 2010, Litton sent to Plaintiffs a letter which notified Plaintiffs of a change in interest rate and principal payment. This letter stated that Plaintiffs owed $398,480.53 in principal. Plaintiffs have not been able to ascertain the full amount due and owing because it is clear that Litton has no idea what is due and owing. (See Exhibit T).

48. In or around early June 2010, while checking on the status of the modification, a Litton representative, Jackie Bettie, for the first time, asked Victor to produce another profit and loss statement and also to state the relationship between himself and Ogor. She maintained that this document was the only reason Litton had not been able to make a decision on the HAMP modification. These documents were faxed over to Litton and confirmed via a phone conversation on June 2, 2010. Plaintiffs were unaware before this conversation that another profit and loss statement was requested by Litton in addition to the documents already supplied.

49. In or around the second week in June 2010, Litton by a letter dated May 27, 2010 indicated that it needed two more outstanding document in order to process the HAMP modification; it needed a signed copy of the most recent federal income tax return with all the schedules included and a copy of the most quarterly profit and loss statement. (See Exhibit U).

50. Even though all of these documents had already been provided to Litton and its receipt confirmed by Litton, again on June 10, 2010 Plaintiffs faxed over to Litton all of these documents. Plaintiffs followed up each transmission or submission of

document to Litton via telephone on June 6, 14, and 21, 2010 to verify that the documents were received by Litton. All these documents were confirmed as received.

51. On or around June 21, 2010, Plaintiffs received a denial letter dated June 14, 2010 in which Litton notified Plaintiff that their HAMP modification was denied for their failure to provide requested documents within the 30-day period. The letter further stated that Plaintiffs although unquailed for HAMP modification may be qualified for a non-HAMP modification with Litton. Litton's denial for lack of documentation came at a convenient time for Litton, as Victor had already paid to Litton $7,443.06. (See Exhibit V).

52. Ogor contacted Litton on the same day as the receipt of the June 14, 2010 letter, June 21, 2010, and spoke to a Litton representative, Talia Sanchez, who explained that the denial letter received was not a denial but a Notice of Intent to Deny should the requested documents not be forwarded to Litton. She demanded yet another profit and loss statement.

53. On June 21, 2010, via certified mail, (which was signed by a Litton rep. Francis Blackshear) Ogor recounted all of these unfair and deceptive conducts by Litton against the Plaintiffs as well as Litton's failure to comply with all of the RESPA requests. Plaintiffs' letter outlined the circumstance of the prior month and the documentation and confirmed receipt every time documentation was sent to Litton. Plaintiffs also actually enclosed all of the documents previously sent to Litton with actual dates and names of the Litton representatives who confirmed receipts. (See Exhibit W).

53. In response to the allegations, Litton by a letter dated July 7, 2010 (received July 14, 2010) maintained that the reason for the denial of the HAMP modification was a failure of the plaintiffs to provide the requested documents. (See Exhibit X).

54. In the July 7, 2010 letter, Litton included a letter dated March 2, 2010 ("March 2, 2010 Letter") which purports to be Litton's response to the several RESPA requests made by the Plaintiffs. The March 2, 2010 Letter is a fraudulent misrepresentation as this letter was never sent to Plaintiffs on March 2, 2010, but rather July 7, 2010. This letter still did not contain any of the enclosures as the letter claimed. Litton also claimed through the July 7, 2010 letter that the March 2, 2010 letter was a response to Victor's February 16, 2010 letter. Victor never sent a February 16, 2010 letter. A letter had been sent on February 14, 2010 by Ogor, but not February 16, 2010. (See Exhibit Y).

55. This March 2, 2010 Letter purported to contain twelve enclosures, and as is Litton's modus operandi, there were no enclosures. This Letter also stated that the original loan amount from November 29, 2005 was $225,600.00 and that the new unpaid principal balance had jumped to $402,805.88. (See Exhibit Y).

56. The March 2, 2010 Letter (which was first sent and received enclosed with the July 7, 2010 Letter) included responses to requests that were never made by Plaintiffs and seemed in parts a response by Litton to a request made by another borrower. (See Exhibit Y).

57. This July 7, 2010 Letter from Litton provided that the Plaintiffs owed an initial principal balance of $225,600.00 and there were supposed fees incurred of $2,415.50

and escrow fees of $21,521.31, that would mean that Plaintiffs only owed $249,536.81 on March 2, 2010, not $402, 805.88.

58. Meanwhile, by a decision of the Land Court dated August 16, 2010, Plaintiffs' Motion to Dismiss on the ground of standing was dismissed.

59. Given the dismissal of the Plaintiffs' Motion in the Land Court, plaintiffs are in danger of having their property unjustifiably foreclosed at any time by Defendants.

60. In a letter dated October 12, 2010, Litton sent to Plaintiffs a letter stating that the payment terms and interest rate was adjusting. The new principal balance due and owing was now $397,019.84. (See Exhibit Z).

61. On or about December 1, 2010, Plaintiffs received the first proffered escrow accounting since the inception of Litton's servicing of the loan. This accounting shows that the escrow account has a deficit of $35,105.54, of which $23,496.00 is paid in taxes. The Town of Saugus, the taxing authority for Plaintiffs' home, shows that $23,549.48 has been paid in taxes to date. (See Exhibit D).

62. This Escrow Accounting also shows that Litton forced payments of insurance upon Plaintiff even though Plaintiffs have maintained insurance payments on the property from 2005 to 2008.

## FIRST CAUSE OF ACTION AS TO ALL DEFENDANTS
## FRAUD

63. Plaintiffs incorporate by reference as if stated fully herein Paragraphs 1-62.

64. Defendants have committed fraudulent representations, actions and omission since the inception of the mortgage loan executed on October 4, 2005.

65. Due to Defendants fraudulent actions, representations, and omissions, Plaintiffs have been and continue to be damaged.

## SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS
## MISREPRESENTATION

66. Plaintiffs incorporate by reference as if stated fully herein Paragraphs 1-65.

67. Defendants have made and continue to make misrepresentations as to facts relative to this instant action.

68. Due to Defendants misrepresentations, Plaintiffs have been and continue to be damaged.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE REAL ESTATE SETTLEMENT
## AND PROCEDURES ACT ("RESPA")
## 12 U.S.C. §§2600 ET SEQ.

69. Plaintiffs incorporate by reference as if stated fully herein Paragraphs 1-68.

70. Plaintiffs have sent at least four separate and distinct qualified written requests to Litton.

71. Litton refused to supply the information requested, investigate the claims of Plaintiffs, and respond in accord with RESPA's requirements.

72. Litton has serviced this mortgage loan since November 29, 2005 and has only supplied one accounting for the supposed escrow account, after the commencement of this litigation and over five years since Litton began servicing this loan.

73. Litton services this loan on behalf of the other Defendants.

74. Due to Defendants willful and malicious refusal to supply the requested documentation and disregard of its statutory duty to supply annual accounting of the escrow account, Plaintiffs have been and continue to be damaged.

## FOURTH CAUSE OF ACTION AS TO WMC
## VIOLATION OF TRUTH IN LENDING ACT

75. Plaintiffs incorporate by reference as if stated fully herein Paragraphs 1-74.

76. Plaintiffs never received the closing documents associated with the mortgage loan executed on October 4, 2005.

77. Upon information and belief, WMC withheld these documents as the documents show that Plaintiffs supposedly received over $71,000.00 in cash at the time of closing. Plaintiffs have never received these funds.

78. Due to Defendant WMC's willful disregard of its statutory requirements in order to defraud Plaintiffs of tens of thousands of dollars, Plaintiffs have been and continue to be damaged.

## FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS
## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

79. Plaintiffs incorporate by reference as if stated fully herein Paragraphs 1-78.

80. Litton purports to act for the other Defendants in order to collect a mortgage debt.

81. Litton has sent communications to Plaintiffs claiming to collect a debt.

82. Litton continuously and systematically refuses to show documentation regarding the debt in which Litton is attempting to collect.

83. Due to Defendants' actions, through its agent Litton, and Litton, Plaintiffs have been and continue to be damaged.

## SIXTH CAUSE OF ACTION AS TO ALL DEFENDANTS
## BREACH OF CONTRACT

84. Plaintiffs incorporate by reference as if stated fully herein Paragraphs 1-83.

85. Defendants have collectively and individually breached the contract between Plaintiffs and Defendants.

86. Due to Defendants' breach of contract, Plaintiffs have been and continued to be damaged.

### SEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS
### UNJUST ENRICHMENT

87. Plaintiffs incorporate by reference as if stated fully herein Paragraphs 1-86.

88. Defendants have been unjustly enriched through the mortgage loan which was executed on October 4, 2005, its subsequent fees, interests, and payments received thereon.

89. Due to Defendants' unjust enrichment, Plaintiffs have been and continue to be damaged.

### EIGHTH CAUSE OF ACTION AS TO ALL DEFENDANTS
### VIOLATION OF MASS. GEN. LAWS ch. 183(C)

90. Plaintiffs incorporate by reference as if stated fully herein Paragraphs 1-89.

91. Upon information and belief, Defendants charged Plaintiffs $80,662.20 in fees and charges at the time of closing. Defendants then entitled $71,528.23 of the charges and fees as "Cash to Borrower" in order to defraud Plaintiffs, and Defendants did not furnish this "cash" to Plaintiffs but instead have charged principal, interest, and fees upon this amount.

92. Due to Defendants' violation of Mass. Gen. Laws ch. 183(c), Plaintiffs have been and continue to be damaged.

**WHEREFORE**, Plaintiffs request that this Honorable Court grant as follows:

1. Award Plaintiffs damages due to Defendants' fraudulent activities;

2. Award Plaintiffs damages due to Defendants' misrepresentations;

3. Award Plaintiffs statutory and punitive damages due to Defendants' violations of RESPA;

4. Award Plaintiffs statutory and punitive damages due to Defendants' violations of TILA;

5. Award Plaintiffs statutory and punitive damages due to Defendants' violations of FDCPA;

6. Award Plaintiffs damages due to Defendants' breach of contract;

7. Award Plaintiffs damaged due to Defendants' unjust enrichment;

8. Award Plaintiffs costs and attorneys' fees;

9. Award Plaintiffs any and all other relief that this Court deems just and right.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Respectfully submitted,
Victor Okoye and Ogor W, Okoye,
By and through their counsel,

/s/: Ashley D. Forest
Ashley D. Forest, BBO# 668187
Law Office of Ashley D. Forest
Ten Post Office Square, 8th Floor
Boston, MA 02109
(617)504-2364 (t) / (617)92-2901(f)
forest@ashleyforestlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VICTOR OKOYE and OGOR W. OKOYE,<br> Plaintiffs<br>  v.<br><br>THE BANK OF NEW YORK MELLON f/k/a<br>THE BANK OF NEW YORK, AS TRUSTEE<br>FOR THE HOLDERS OF THE GE-WMC<br>ASSET-BACKED PASS-THROUGH<br>CERTIFICATES, SERIES 2005-2, WMC<br>MORTGAGE CORPORATION, MORTGAGE<br>ELECTRONIC REGISTRATION SYSTEMS,<br>INC., AND LITTON LOANS SERVICING, LP.,<br> Defendants | CIVIL ACTION NO.:<br><br>10-11563-DPW |

## CERTIFICATE OF SERVICE

I, Ashley D. Forest, have hereby served the (Proposed) First Amended Complaint through the Court's ECF System on December 14, 2010.

                 Respectfully submitted,

                 /s/: Ashley D. Forest
                 Ashley D. Forest, BBO# 668187
                 Law Office of Ashley D. Forest
                 Ten Post Office Square, 8th Floor
                 Boston, MA 02109
                 (617)504-2364 (t) / (617)92-2901(f)
                 forest@ashleyforestlaw.com