UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


VICTOR OKOYE and OGOR W. OKOYE,          )
                                         )
        Plaintiffs,                      )
                                         )      CIVIL ACTION NO.
v.                                       )      10-11563-DPW
                                         )
BANK OF NEW YORK MELLON f/k/a            )
BANK OF NEW YORK, as TRUSTEE FOR         )
HOLDERS OF GE-WMC ASSET-BACKED           )
PASS-THROUGH CERTIFICATES, SERIES        )
2005-2; WMC MORTGAGE CORPORATION;        )
MORTGAGE ELECTRONIC REGISTRATION         )
SYSTEMS, INC.; and LITTON LOAN           )
SERVICING, LP,                           )
                                         )
        Defendants.                      )


MEMORANDUM AND ORDER
July 28, 2011

    Following the initiation of foreclosure proceedings on their

home, plaintiffs Victor and Ogor Okoye (the "Okoyes") filed suit

against various financial institutions and loan servicers

alleging violations of Massachusetts's consumer protection law,

Massachusetts General Laws ch. 93A, § 9, and the Massachusetts

Predatory Home Loan Practices Act, Massachusetts General Laws,

ch. 183C, § 4.  Defendant WMC Mortgage Corporation ("WMC"), the

originating lender of the Okoyes' mortgage, and defendant Litton

Loan Servicing, LP ("Litton"), the current servicer of the

Okoyes' mortgage, have filed motions to dismiss the Okoyes'

claims.  The Okoyes have since moved for leave to amend the

Complaint.  I will grant WMC's motion, grant in part and deny in

part Litton's motion, and deny the Okoyes' motion to amend.

## I. BACKGROUND

On October 4, 2005, the Okoyes refinanced a mortgage on their home in Saugus, Massachusetts, in the amount of $409,700.00. (Compl. ¶ 9.) WMC was the originating lender and holder of the mortgage, and Mortgage Electronic Registration System, Inc. ("MERS"), as WMC's nominee, was the initial servicer of the loan. (Compl., Ex. 1 at 27.)

The mortgage included an adjustable rate rider and a balloon rider that were executed by the Okoyes on October 4, 2005; the riders were referenced by and incorporated into the mortgage itself.[1] (Compl., Ex. 1 at 28, Ex. 2; Defs.' BNY, Litton, and MERS Mot. to Dismiss [hereinafter Litton Mot.], Ex. C at 23-27 (DE 10-1).) Victor Okoye alone signed the promissory note and, on October 5, 2005, an addendum to the adjustable rate note.[2] (Compl. ¶ 10; Litton Mot., Ex. B.) The riders and the addendum clearly state that the interest rate on the loan is variable and that the full outstanding balance of the loan would be due at

---

[1]The Okoyes assert that WMC unilaterally added the balloon rider five months after the execution of the mortgage. (Compl. ¶¶ 24-25.) However, the mortgage documents show that the Okoyes signed both the balloon rider and the adjustable rate rider on October 4, 2005. (Compl., Ex. 2; Litton Mot., Ex. C at 23-27.)

[2]Victor Okoye has since alleged in the proposed amended complaint that he never signed the addendum. (Proposed Am. Compl. ¶ 20.)

maturity.  (Litton Mot., Exs. B, C.)  The mortgage was duly
recorded.  (Litton Mot., Ex. D.)

On October 23, 2009, MERS, as WMC's nominee, assigned the
mortgage to Bank of New York Mellon ("BNY") as trustee for the
holders of the GE-WMC Asset-Backed, Pass-Through Certificates,
Series 2005-2.  (Compl. ¶ 29; Litton Mot., Ex. D.)  The
assignment was duly recorded.  (Litton Mot., Ex. D.)  At some
point prior to the assignment, Litton began servicing the loan.
(Compl. ¶ 6.)

Beginning in mid-2009, the Okoyes started missing some of
their loan payments.  (Compl. ¶ 26.)  Litton issued a Notice of
Default and Intent to Accelerate on June 21, 2009, at which time
Litton informed the Okoyes that they were $36,685.98 in arrears,
a number the Okoyes dispute.  (Compl. ¶¶ 27-28.)  The Okoyes'
attempts to contact Litton were initially unsuccessful, but, in
September and October 2009, Litton told them to continue payments
and to apply for loan modification.  (Compl. ¶ 32.)  In October
2009, Litton also informed the Okoyes that it had not received
their initial loan modification application, and the Okoyes
resubmitted.  (Compl. ¶ 34.)  At no point, and despite repeated
requests by the Okoyes and their counsel, did Litton provide a
breakdown of the arrearage.  (Compl. ¶¶ 34-38.)  On November 13,
2009, Litton denied Victor Okoye's application for loan
modification on the ground that he was ineligible under the

federal Home Affordable Modification Program ("HAMP"). (Compl. ¶ 35.) Litton denied the Okoyes alternative modification on November 17, 2009. (Compl. ¶ 36.)

Subsequent phone calls elicited inconsistent quotes of the amount owed and also indicated that Litton had not credited all of the Okoyes' payments. (Compl. ¶ 39.) The Okoyes discovered at this time that their monthly payment had increased from $2,398.62 to $4,246.42 effective December 2008, but they had not received formal notice of the rate or payment increases. (Compl. ¶ 40.) They only received a rate and payment increase notification on October 9, 2009, which quoted the new payment as $4,246.41 effective December 1, 2009. (Compl. ¶ 40.) Litton admitted that this was the first rate increase since the inception of the loan, despite the previously unknown rate increase imposed as of December 2008. (Compl. ¶¶ 41–42.) The Okoyes sent another written request for information on December 2, 2009, and Litton replied on December 31, 2009. (Compl. ¶ 44.) However, the "Reinstatement Quote" enclosure was not included in the letter. (Compl. ¶¶ 44–45.)

On January 8, 2010, BNY initiated foreclosure proceedings against the Okoyes. (Compl. ¶ 47.) On February 1, 2010, the Okoyes informed Litton that no attachment had been enclosed in the response to the December request for information, and, on February 16, 2010, sent another written request for loan

4

documents and for proof of BNY's standing to initiate foreclosure proceedings. (Compl. ¶¶ 46, 49.) According to the Okoyes, they never received the documents requested, but were informed that Litton had sent a HAMP trial period plan ("TPP") packet, which if signed, would modify the mortgage. (Compl. ¶ 51.) No packet arrived, and the Okoyes finally acquired a fax of the plan around February 25, 2010. (Compl. ¶ 52.) The packet required the Okoyes to return the signed offer packet along with certain supporting documentation and the first modified payment by March 1, 2010. (Compl. ¶ 52.) The Okoyes complied with the request, Litton acknowledged receipt of all requested documents, and the trial period began. (Compl. ¶¶ 53-54.)

After the three-month trial period, Litton requested additional documents, including some documents that had already been provided. (Compl. ¶¶ 55-57.) The Okoyes provided the documents and received assurances by telephone that all requested documents had been received. (Compl. ¶ 57.) Nevertheless, in a letter dated June 14, 2010, Litton denied loan modification under HAMP for failure to provide the requested documents. (Compl. ¶ 58.) Following a further request for documents under the Real Estate Settlement and Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2610 *et seq.*, Litton provided documents that they had allegedly sent in response to the Okoyes' prior requests, but which the Okoyes claim never to have received. (Compl. ¶¶ 60-65.) The

documents included apparent earlier responses to requests the
Okoyes never made and "seemed in parts to be a response made by
Litton to a request made by another borrower." (Compl. ¶ 65.)

On August 16, 2010, the Massachusetts Land Court denied the
Okoyes' motion to dismiss BNY's foreclosure action. (Compl.
¶ 67.) Three days later, on August 19, 2010, the Okoyes filed
this suit against WMC, BNY, MERS, and Litton in Essex Superior
Court. The action was removed to this court on October 5, 2010.
In the sole count against WMC, which was also brought against the
other defendants, the Okoyes allege that WMC, BNY, MERS, and
Litton engaged in unfair and deceptive trade practices, Mass.
Gen. Laws ch. 93A, § 9 ("Chapter 93A"), and violated the
Predatory Home Loan Practices Act, Mass. Gen. Laws, ch. 183C
("Chapter 183C"), § 4. (Compl. ¶¶ 77-97.) The Okoyes also
brought suit to quiet title against Litton and BNY.[3] I granted
an earlier motion to dismiss all claims against BNY and MERS and
dismissed the quiet title claim against Litton. I permitted
further briefing as to count two against Litton and will resolve
that outstanding portion of Litton's motion to dismiss here. I
did not consider the claims against WMC at that time because WMC
had not yet been served in this action. WMC has since been
served and has filed a motion to dismiss the sole count against

---

[3]The Okoyes also allege that BNY lacked standing to
institute foreclosure proceedings. (Compl. ¶¶ 69-76, 98-103.)

it.  On the eve of the hearing addressing these two pending
motions, the Okoyes sought leave to amend the Complaint.

I will first address the outstanding motions to dismiss and
then turn to the Okoyes' motion for leave to amend the Complaint.

## II.  MOTIONS TO DISMISS

### A.  Standard of Review

In order to survive a motion to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(6), "a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.
Ct. 1937, 1949 (2009) (citation and internal quotation marks
omitted).  In considering a motion to dismiss, I must accept all
factual allegations in the Complaint as true and draw all
reasonable inferences in favor of the Okoyes.  *SEC v. Tambone*,
597 F.3d 436, 441 (1st Cir. 2010) (*en banc*).

I am "generally limited to considering facts and documents
that are part of or incorporated into the complaint." *Giragosian
v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (citation and internal
quotation marks omitted).  However, I "may also consider
documents incorporated by reference in the [complaint], matters
of public record, and other matters susceptible to judicial
notice." *Id.* (citation and internal quotation marks omitted)
(alteration in original).

**B.  WMC's Motion to Dismiss**

The Okoyes allege two consumer-protection claims against
WMC.  First, the Okoyes claim that WMC violated Chapter 93A by
engaging in unfair and deceptive trade practices "with regards to
the servicing, origination and institution of foreclosure
proceedings" on their mortgage.  (Compl. ¶ 83.)  More
specifically, the Okoyes allege that WMC unilaterally changed the
terms of the mortgage five months after its execution and that
the loan application and mortgage documents contained "material
omission[s] and misleading representations" that caused the
Okoyes to "execute a predatory loan document[]."[4]  (Compl. ¶¶ 83,
92-93.)  Second, the Okoyes claim that WMC violated Chapter 183C
by issuing a high-cost home loan.  (Compl. ¶¶ 80-81.)

**1.  Chapter 93A Claims**

Chapter 93A requires any potential plaintiff alleging a

_____

[4]The Okoyes allege for the first time in their briefing in
opposition to WMC's motion to dismiss that WMC failed to give
them the "closing documents, including the HUD statement until
November 4, 2010."  (Opp. at 3-4.)  I should note that, in the
original Complaint now before me, it is unclear whether the
Okoyes allege that WMC failed to furnish copies of the mortgage
documents and/or note at the time of execution or failed only to
provide the HUD document describing closing fees ($9,133.97) and
"cash to borrowers" ($71,528.23).  In their proposed amended
complaint, the Okoyes specifically allege that they received no
documentation at all.  (Proposed Am. Compl. ¶ 11.)  However, it
is apparent that the Okoyes had a copy of at least the mortgage
before November 4, 2010, because it was attached as an exhibit to
the Complaint.  Additionally, the HUD document was attached to
the first motion to dismiss filed in October 2010 with a "Waiver
of Borrower(s) Right to Receive Hud-1 at Settlement" signed by
Victor Okoye on October 4, 2005.  (Litton Mot., Ex. E.)

violation of § 9 of that chapter to have provided a written demand for relief to the potential defendant no less than thirty days before filing suit. Mass. Gen. Laws ch. 93A, § 9(3). This demand requirement "is not merely a procedural nicety, but, rather, 'a prerequisite to suit'" and "must be alleged in the plaintiff's complaint." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975)). Such a requirement does not apply, however, "if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth." Mass. Gen. Laws ch. 93A, § 9(3). A recorded mortgage secured by real property located in the Commonwealth is an "asset[] within the commonwealth" for purposes of Chapter 93A. *In re Anderson*, No. 04-44554-JBR, 2006 WL 2786974, at *1 (Bankr. D. Mass. Sept. 26, 2006).

The Okoyes concede that they sent no demand letter to WMC but argue that WMC falls within the limited exception to the demand requirement. (Compl. ¶ 84.) It is undisputed that WMC, a California corporation, maintains no place of business in Massachusetts. However, WMC has presented evidence in the form of public documents to demonstrate that WMC holds at least one mortgage in the Commonwealth. It is apparent, WMC holds "assets within the commonwealth," and, consequently, the Okoyes were required to send WMC a demand letter. The Okoyes' failure to

9

send a demand letter "is sufficient ground to justify dismissal of the Chapter 93A claim[s]." *Rodi*, 389 F.3d at 19 (citing, *inter alia*, *City of Boston v. Aetna Life Ins. Co.*, 506 N.E.2d 106, 109 (Mass. 1987)). The Okoyes' Chapter 93A claims, therefore, cannot succeed as a matter of law.

In any event, even if the demand requirement were inapplicable, all Chapter 93A claims arising before August 20, 2006, are time-barred. *See* Mass. Gen. Laws ch. 260, § 5A ("Actions arising on account of violations of . . . chapter ninety-three A . . . shall be commenced only within four years next after the cause of action accrues."). Mere allegation of a "continuing violation" does displace the four-year statute of limitations for Chapter 93A claims. *Salois v. Dime Savs. Bank of N.Y. FSB*, 128 F.3d 20, 25 (1st Cir. 1997); *In re Robert*, 432 B.R. 464, 470 (Bankr. D. Mass. 2010). Since the Okoyes' loan originated in October 2005, any Chapter 93A claims concerning actions taken at that time are barred by the statute of limitations.[5]

I will therefore dismiss all Chapter 93A claims against WMC.

### 2.  Chapter 183C Claim

The Okoyes allege that WMC violated Chapter 183C by entering

---

[5]The statute of limitations on Chapter 183C claims is five years from closing and, therefore, would not bar any otherwise actionable claims raised under that chapter. Mass. Gen. Laws, ch. 183C, § 15(b)(1).

into a predatory loan.  It is unclear from the face of the
Complaint whether this claim stands alone or was brought as part
of the Okoyes' broader Chapter 93A claim.[6]  (Compl. ¶¶ 78-81.)
The language of the Complaint suggests the latter, whereas the
Okoyes' briefing seems to imply the former.  To the extent that
the claim was brought within the "unfair and deceptive practices"
rubric of Chapter 93A, it must be dismissed for failure to
satisfy the demand-letter requirement and statute of limitations.
*See supra* Part II.B.1.  And, to the extent that it is a stand-
alone claim, it must be dismissed because the Okoyes' loan is not
a "high-cost" loan as defined by the statute.

     Under Chapter 183C, "[a] lender shall not make a high-cost
home mortgage loan unless the lender reasonably believes at the
time the loan is consummated that 1 or more of the obligors, will
be able to make the scheduled payments to repay the home loan."
Mass. Gen. Laws ch. 183C, § 4.  The provisions of Chapter 183C
apply only to "high-cost" loans as defined by § 2 of that
chapter.  Mass. Gen. Laws ch. 183C, § 2; *see also McDermott v.
Mortg. Elec. Registration Sys., Inc.*, No.08-12121-GAO, 2010 WL
3895460, at *6 (D. Mass. Sept. 30, 2010); *In re Laudani*, 401 B.R.
9, 33 (Bankr. D. Mass. 2009).  Under § 2, in order to be "high-
cost," a loan must meet one of two conditions:

_____

     [6]The Okoyes have alleged an independent claim under Chapter
183C against all defendants in their proposed amended complaint.
(Proposed Am. Compl. ¶¶ 90-92.)

> (i) [T]he annual percentage rate at consummation will
> exceed by more than 8 percentage points for first-lien
> loans . . . the yield on United States Treasury
> securities having comparable periods of maturity to the
> loan maturity . . . . [or]
>
> (ii) Excluding either a conventional prepayment penalty
> or up to 2 bona fide discount points, the total points
> and fees exceed the greater of 5 per cent of the total
> loan amount or $400 . . . .

Mass. Gen. Laws ch. 183C, § 2.

The Okoyes' loan satisfies neither condition. The Complaint alleges that "[t]he loan in question . . . qualifies as a high-cost home loan pursuant to [Chapter] 183C" and recites the definition provided by § 2. However, the mortgage documentation provided by the parties demonstrates otherwise. First, with an initial interest rate of 6.5 percent, the loan's interest rate did not exceed the comparable Treasury yield by eight percentage points. (Compl., Ex. 2.) Second, the Okoyes' $9,133.97 in fees at closing were below the threshold of five percent of the total loan amount, which would be $29,485. (Compl., Ex. 1; Litton Mot., Ex. E.)

The Okoyes allege for the first time in their briefing on this motion that they never received nor knew of the $71,528.23 in "cash to borrower" listed on the HUD closing document. (Opp. at 4.) However, the Okoyes' loan application, signed by Victor Okoye, lists the full loan amount sought as $409,700 and an estimated "cash []to borrower" amount of $73,613.23 based on $7,466.93 in estimated fees. (Litton Supp. Mem., Ex. A (DE 23-

1).)  The $71,528.23 actual "cost to borrower" (based on higher

actual fees) should have come as no surprise to the Okoyes.  It

thus did not constitute a fee within the meaning of Chapter

183C.[7]  Consequently, the Okoyes' loan is not a "high-cost" loan,

and the provisions of Chapter 183C are inapplicable.

Accordingly, I must dismiss any Chapter 183C claims.

## C.  Litton's Motion to Dismiss

The Okoyes' remaining claim against Litton arises not from

the origination of the loan — as is the case with their claim

against WMC — but rather from the servicing of the loan,

including failure to produce documents, failure to credit

payments, bad faith attempts to negotiate loan modification, and

lack of notice of payment increases.  Unlike WMC, however, Litton

does not assert that it holds any assets or maintains a place of

business in the Commonwealth.  Consequently, the lack of a demand

letter is not fatal to the Okoyes' Chapter 93A claim against

Litton.  However, as explained more fully above, the Okoyes'

allegations against Litton, if sufficiently pled, may only

proceed insofar as they are not time-barred by the applicable

four-year statute of limitations.  *See supra* Part II.B.1.  I must

---

[7]The Okoyes' argument that because they did not receive this
"cash to borrower" sum, it constitutes a hidden fee, is similarly
unavailing.  According to the loan documents, the sum was not a
fee and, consequently, to the extent that the Okoyes may have
sought to make a claim regarding the purported nonreceipt of the
money, the appropriate action was not under Chapter 183C.

therefore examine whether the Okoyes have sufficiently pled their cause of action against Litton within this limitation.

### 1.  Chapter 93A Claim

The Okoyes contend that Litton violated Chapter 93A by acting unfairly at the origination of the loan, failing to modify the loan, ignoring requests for loan information, making numerous misrepresentations, and issuing fraudulent documentation, only two of which (unfairness in the origination of the loan and failure to grant loan modification) Litton addresses specifically.  Although the time period for which Litton was responsible for servicing the loan is unclear at this time, I must take the factual allegations pled in the Complaint as true.[8] *Tambone*, 597 F.3d at 441.  According to the Complaint, specific allegations of unfair and deceptive acts by Litton include: (a) failure to forward payments to the lender (Compl. ¶ 85); (b) inflating the amount owed (Compl. ¶ 86); (c) failure to produce documents requested under RESPA (Compl. ¶ 87); (d) refusing to negotiate modification in good faith and denying HAMP modification on pretextual grounds (Compl. ¶ 87); (e) improperly calculating interest rates and fees (Compl. ¶¶ 89-90); and (f) fraudulently manufacturing documents (Compl. ¶ 91).

---

[8]There is reference to Litton's servicing beginning on November 29, 2005, but the factual allegation was not made in the Complaint and is not supported by any public or other records submitted.

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Conduct is "deceptive" when it has "the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004). "Unfair" conduct, however, has never explicitly been defined. *See Fernandes v. Havkin*, 731 F. Supp. 2d 103, 116 (D. Mass. 2010); *see also In re Pharm. Indus. Average Wholesale Price Litig. (In re Pharm. Indus.)*, 491 F. Supp. 2d 20, 93 (D. Mass 2007) (noting that, "[i]nstead, whether an act is unfair or deceptive is best discerned from the circumstances of each case" (citation and internal quotation marks omitted)). However, "Massachusetts courts have . . . enumerated several factors to be considered when determining whether a practice is unfair." *In re Pharm. Indus.*, 491 F. Supp. 2d at 93. Those factors are: "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009) (citation and quotation marks omitted).

In considering the factors in the light of the factual allegations at hand, "[t]he Court should focus 'on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a [Chapter 93A] fairness determination.'" *In re Pharm. Indus.*, 491 F. Supp. 2d at 94 (citations omitted) (quoting *Mass. Emp'r's Ins. Exch. v. Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (Mass. 1995)). To allege a Chapter 93A violation successfully, "it is neither necessary nor sufficient that a particular act or practice violate common or statutory law." *Mass. Eye & Ear Infirmary*, 552 F.3d at 69. Whether conduct constitutes a violation of Chapter 93A is a question of law for the court to decide. *Id.* at 69. However, while courts performing this "legal gate-keeping function," *id.*, have some leeway at the motion-to-dismiss stage, courts have determined that certain conduct cannot constitute unfair or deceptive acts under Chapter 93A.

### a. Violations of HAMP Guidelines

The Okoyes allege that they are eligible for HAMP modification, complied with the terms of their TPP, and submitted to Litton all of the necessary documents for HAMP modification. Consequently, they contend, Litton's denial of permanent HAMP modification was a violation of HAMP Guidelines constituting unfair business practices in violation of Chapter 93A. Because

this issue has become a recurring one both nationally and in this district,[9] I will address it in detail.

The Emergency Economic Stabilization Act of 2008 ("EESA"), Pub. L. No. 110-343, § 109, 122 Stat. 3765, 3774–76, provided the Treasury Secretary with the authority to establish HAMP. "HAMP provides financial incentives to loan servicers and investors to encourage them to modify the terms of existing private mortgages where foreclosures may be avoidable and modification is in the financial interests of the involved party." *Phu Van Nguyen v. BAC Home Loan Servs., LP*, No. C-10-01712, 2010 WL 3894986, at *1 (N.D. Cal. Oct. 1, 2010) (footnote omitted). Under HAMP, loan servicers voluntarily enter into a contract, called a Servicer Participation Agreement ("SPA"), with the Federal National

_____

[9]Since January 1, 2011, judges of this court have issued at least ten decisions addressing Chapter 93A claims predicated on HAMP-related conduct. *See Belyea v. Litton Loan Servicing, LLP*, No. 10-10931, 2011 WL 2884964 (D. Mass. July 15, 2011) (Casper, J.); *In re Bank of Am. Home Affordable Modification Prog. (HAMP) Contract Litig.* (*In re Bank of Am.*), 10-md-02193, 2011 WL 2637222 (D. Mass. July 6, 2011) (Zobel, J.); *Stagikas v. Saxon Mortg. Servs., Inc.*, — F. Supp. 2d —, 2011 WL 2652445 (D. Mass. July 5, 2011) (Saylor, J.); *Kozaryn v. Ocwen Loan Servicing, LLC*, — F. Supp. 2d —, 2011 WL 1882370 (D. Mass. May 17, 2011) (Gorton, J.); *Blackwood v. Wells Fargo Bank, N.A.*, No. 10-10438-JGD, 2011 WL 1561024 (D. Mass. Apr. 22, 2011) (Dein, M.J.); *Alpino v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 10:12040-PBS, 2011 WL 1564114 (D. Mass. Apr. 21, 2011) (Saris, J.); *Morris v. BAC Home Loans Servicing, L.P.*, — F. Supp. 2d —, 2011 WL 1226974 (D. Mass. Apr. 4, 2011) (Saris, J.); *Brown v. Bank of Am. Corp.*, No. 10-11085, 2011 WL 1311278 (D. Mass. Mar. 31, 2011) (O'Toole, J.); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342 (D. Mass. 2011) (Saylor, J.); *Ording v. BAC Home Loans Servicing, LP*, No. 10-10670, 2011 WL 99016 (D. Mass. Jan. 10, 2011) (Bowler, M.J.).

Mortgage Association ("Fannie Mae"), which acts as HAMP administrator. *See id.* The Treasury Secretary designated the Federal Home Loan Mortgage Corporation ("Freddie Mac") as compliance officer of HAMP. U.S. Dep't of Treasury, Supp. Dir. 09-08, at 4 (Nov. 3, 2009); *see also Marks v. Bank of Am., N.A.*, No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *6 (D. Ariz. June 22, 2010). The SPA establishes the servicers' obligations and incorporates, by reference, any Program Guidelines and Supplemental Directives concerning HAMP that are issued by the Treasury Department. (Compl., Ex. A at 2.) There is no dispute in this case that Litton participates in the HAMP program.

Because courts have almost uniformly found that HAMP creates no private right of action,[10] consumer protection statutes — and Massachusetts's broadly interpreted Chapter 93A in particular — have become an attractive alternative means of attempting to

---

[10]The overwhelming majority of judicial officers of this court who have addressed the issue have held that there is no private right of action for a borrower under HAMP itself*. See, e.g.*, *In re Bank of Am.*, 2011 WL 2637222, at *3 n.2; *Stagikas*, 2011 WL 2652445, at *4 (collecting cases); *Ording*, 2011 WL 99016, at *7; *Durmic*, 2010 WL 4825632, at *2 n.9. This is consistent with courts outside the district. *See, e.g.*, *Shurtliff v. Wells Fargo Bank, N.A.*, No. 1:10-cv-165, 2010 WL 4609307, at *3 (D. Utah Nov. 5, 2010); *McCurdy v. Wells Fargo Bank, N.A.*, No. 2:10-cv-00880, at *2 (D. Nev. Oct. 18, 2010); *Zoher v. Chase Home Fin.*, No. 10-14135-CIV, 2010 WL 4064798, at *3 (S.D. Fla. Oct. 15, 2010); *Wright v. Bank of Am., N.A.*, No. CV 10-01723, 2010 WL 2889117, at *4-5 (N.D. Cal. July 22, 2010); *see also Wallace v. Bank of Am.*, No. 10-cv-017-JL, 2010 WL 2574058, at *3 (D.N.H. June 17, 2010), *adopted by* 2010 WL 3219355 ("Congress did not create a private right of action for individuals to sue banks under . . . EESA." (citation omitted)).

recover for alleged HAMP violations where no action is otherwise
available. *See Hershenow v. Enterprise Rent-A-Car Co. of Boston*,
840 N.E.2d 526, 531 (Mass. 2006) (noting that the lack of a
private right of action under a statute does not "bar all private
remedies for unfair and deceptive . . . practices" unless intent
to do so is apparent from the statute); *Whitehall Co. v.
Merrimack Valley Distrib. Co.*, 780 N.E.2d 479, 483 (Mass. App.
Ct. 2002). The proliferation of HAMP-related Chapter 93A cases
in this district alone demonstrates this trend. *See supra* note
9. The issue then is whether a violation of the HAMP Guidelines
or failure to grant a loan under those Guidelines can give rise
to a Chapter 93A claim.

Contrary to the Okoyes' assertions, failure to grant a HAMP
loan, without more, is not a *per se* Chapter 93A violation. The
implementing regulations for Chapter 93A state that "an act or
practice is a violation of [chapter] 93A, § 2 if . . . [i]t
violates the Federal Trade Commission Act, the Federal Consumer
Credit Protection Act or other Federal consumer protection
statutes within the purview of [Chapter] 93A, § 2." 940 C.M.R. §
3.16(4). Although HAMP Guidelines and supplemental directives
are federal directives governing the contractual obligations of
servicers to the government under SPAs, they are not "federal
consumer protection statutes" because they are not statutes. *See
Zoher v. Chase Home Fin.*, No. 10-14135-CIV, 2010 WL 4064798, at

*3 (S.D. Fla. Oct. 15, 2010) (noting that "the [HAMP] Guidelines allegedly being violated are not a statute . . ."). Section 3.16(4), therefore, does not render violations of HAMP *per se* violations of Chapter 93A.

The question then is whether the HAMP violations alleged in the Complaint — here, failure to modify a loan for eligible borrowers — constitute an otherwise cognizable Chapter 93A violation. The failure to modify a loan under HAMP, without more, cannot constitute a Chapter 93A violation. A positive determination on eligibility is not tantamount to immediate enrollment in a modification program or permanent modification following a trial period. As of the dates of Litton's first consideration and denial of HAMP modification to the Okoyes in fall of 2009, Litton was under no obligation to modify the Okoyes' loan even if they were eligible.[11]  *See Sankey*, 2010 WL 4450404, at *2; *see also Simmons v. Countrywide Home Loans, Inc.*, No. 09cv1245, 2010 WL 2635220, at *5 (S.D. Cal. June 29, 2010); *Escobedo v. Countrywide Home Loans, Inc.*, No. 09cv1557, 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009) ("The [HAMP] Guidelines set forth eligibility requirements and states: 'Participating servicers are required to *consider* all eligible loans under the

---

[11]It is arguable that the Treasury Department has since imposed a requirement that HAMP-eligible borrowers receive — or be offered evaluation for — loan modifications prior to foreclosure.  U.S. Dep't of Treasury, Supp. Dir. 10-02, at 5 (Mar. 24, 2010).

program guidelines unless prohibited by the rules of the

applicable PSA and/or other investor servicing agreements.' . . .

The Agreement does not state that Countrywide must modify all

mortgages that meet the eligibility requirements." (citation

omitted) (emphasis in original)).  Thus, the Okoyes must allege

additional facts demonstrating that the denial of their

application for modification under HAMP was independently

actionable under Chapter 93A.

Within the last year, several judges in this district have

followed this approach and held that "HAMP violations can give

rise to a viable [Chapter] 93A claim if the activity would be

independently actionable under 93A as unfair and deceptive."[12]

*Morris v. BAC Home Loans Servicing, L.P.*, — F. Supp. 2d —, 2011

WL 1226974, at *1 (D. Mass. Apr. 4, 2011) (Saris, J.); *see also*

*Blackwood v. Wells Fargo Bank, N.A.*, No. 10-10438-JGD, 2011 WL

---

[12]Other courts outside of this district have considered HAMP
violations in the context of state consumer protection acts.
Those courts have not explicitly found that HAMP preempts
liability under these acts, but, like the sessions of this court,
instead have considered whether specific violations of HAMP were
otherwise actionable under the state consumer protection
statutes.  *See, e.g.*, *Boyd v. U.S. Bank, N.A. ex rel. Sasco Aames
Mortg. Loan Trust Series 2003-1*, — F. Supp. 2d —, 2011 WL
1374986, at *4 (N.D. Ill. Apr. 12, 2011) (Feinerman, J.); *James
v. GMAC Mortg. LLC*, — F. Supp. 2d —, 2011 WL 81366, at *12 (D.
Me. Jan. 10, 2011); *Joern v. Ocwen Loan Servicing, LLC*, No. CV-
10-0134, 2010 WL 3516907, at *7 (E.D. Wash. Sept. 2, 2010)
(Quakenbush, J.); *Zendejas v. GMAC Wholesale Morg. Corp.*, No.
1:10-cv-00184, 2010 WL 2629899, at *6 (E.D. Cal. June 29, 2010)
(Wanger, J.); *Wallace,* 2010 WL 2574058, at *4 (D.N.H. June 17,
2010) (McCafferty, M.J.).

1561024, at *4 (D. Mass. Apr. 22, 2011) (Dein, M.J.); *Ording v. BAC Home Loans Servicing, LP*, No. 10-10670, 2011 WL 99016, at *6 (D. Mass. Jan. 10, 2011) (Bowler, J.); *see also Durmic v. J.P. Morgan Chase Bank, NA*, No. 10-cv-10380, 2010 WL 4825632, at *6 (D. Mass. Nov. 24, 2010) (Stearns, J.) (deferring consideration of motion to dismiss a Chapter 93A claim predicated in part upon violations of HAMP). *But see Kozaryn v. Ocwen Loan Servicing, LLC*, — F. Supp. 2d —, 2011 WL 1882370, at *2 (D. Mass. May 17, 2011) (Gorton, J.) (questioning broad interpretation of Chapter 93A in the HAMP context but dismissing the claim on the basis that, even if Chapter 93A permitted recovery for HAMP violations, the plaintiff failed to allege sufficiently that the violations were unfair or deceptive). The judges that have found that HAMP violations may underlie a Chapter 93A claim have generally followed the three-part inquiry laid out in *Ording* and adopted by *Morris*: "(1) have plaintiffs adequately plead that defendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under 93A even absent the violation of a statutory provision (*i.e.* are the violations unfair or deceptive); and (3) if the conduct is actionable, is recovery pursuant to chapter 93A compatible with the 'objectives and enforcement mechanisms' of HAMP." *Morris*, 2011 WL 1226974, at *4 (quoting *Ording*, 2011 WL 99016, at *7 (citing *Whitehall Co.*, 780 N.E.2d at 483)).

With respect to the third factor, the decisions that have considered Chapter 93A in the HAMP context, *and* found that the plaintiffs have sufficiently pleaded unfair or deceptive practices, have found recovery under Chapter 93A compatible with the objectives of HAMP. *See Blackwood*, 2011 WL 1561024, at *4 ("Allowing homeowners facing foreclosure to recover damages under chapter 93A for a defendant's failure to comply with HAMP is compatible with the HAMP objective of providing relief to defaulting borrowers so as to enable them to stay in their homes."); *Morris*, 2011 WL 1226974, at *6 ("[G]iven the limited nature of Freddie Mac's actual enforcement power, there is nothing about recovery under Chapter 93A that actively conflicts with the enforcement scheme in the HAMP guidelines.").

In addressing the first and second factors, the decisions generally have required allegations of more than mere technical violations and clerical errors to support a Chapter 93A claim predicated on HAMP violations. *See Kozaryn*, 2011 WL 1882370, at *3 (dismissing Chapter 93A claim based on servicer's denial of loan modification on allegedly false basis of nonsubmission of financial documents); *Brown*, 2011 WL 1311278, at *3 ("The plaintiff has alleged no facts that suggest that this error [in a letter to the Attorney General] rose above the level of mere negligence or caused her actual harm. A Chapter 93A violation cannot be satisfied by such a low level of error."); *Morris*, 2011

WL 1226974, at *7 (finding allegations that servicer did not
acknowledge application or issue decision on application within
HAMP deadlines to be nonactionable). Thus, to survive a motion
to dismiss, "[t]he complaint must demonstrate unfairness to the
degree of factual detail required by *Iqbal* and *Twombly* . . . as
opposed to minor delay or trivial clerical flaws." *Morris*, 2011
WL 1226974, at *7. The few Chapter 93A claims that have survived
motions to dismiss have alleged a pattern of misrepresentations,
failure to correct detrimental errors, and/or dilatory conduct on
the part of the servicer and/or bank that the courts have found
could amount to unfair or deceptive practices. *See Blackwood*,
2011 WL 1561024, at *4 (noting that the plaintiff "alleged
numerous misrepresentations regarding the status of his
application for a HAMP modification as well as concerning the
defendants' intention to foreclose . . . [and] violations of
specific HAMP regulations which prohibit foreclosures while the
applications are pending"); *see also Morris*, 2011 WL 1226974, at
*7 (finding that representations by the plaintiff at the motion
hearing suggested more than trivial violations of HAMP and,
therefore, denying the motion to dismiss on the condition that
the plaintiff to file an amended complaint).

A group of related cases in this district have addressed
Chapter 93A claims based on a servicer's specific alleged
misrepresentation that compliance with a HAMP TPP would entitle a

mortgagor to permanent modification under HAMP.  *See Bosque v.*
*Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 353-54 (D. Mass.
2011) (Saylor, J.) ("Plaintiffs allege that they were led to
believe that it would be entitled to a permanent loan
modification or a denial of eligibility if they complied with
their obligations under the TPP.  These allegations are plainly
sufficient to state a claim under ch. 93A for unfair or deceptive
practices."); *see also Belyea v. Litton Loan Servicing, LLP*, No.
10-10931, 2011 WL 2884964, at *10 (D. Mass. July 15, 2011)
(Casper, J.); *In re Bank of Am. Home Affordable Modification*
*Prog. (HAMP) Contract Litig.*, 10-md-02193, 2011 WL 2637222, at *5
(D. Mass. July 6, 2011) (Zobel, J.); *Stagikas v. Saxon Mortg.*
*Servs., Inc.*, — F. Supp. 2d —, 2011 WL 2652445 (D. Mass. July 5,
2011) (Saylor, J.).  The unfair and deceptive practices alleged
in these cases are not violations of a HAMP directive *per se* but
rather arise from the servicer's alleged representation that
compliance with the TPP would lead to permanent modification,
which thereby induced the homeowners to continue payments when
the servicer never intended to modify the loan.  Thus, reliance
on the servicer's alleged misrepresentation caused "several
injuries . . . including wrongful foreclosures, increased fees,
costs incurred to avoid foreclosure, loss of opportunities to
pursue refinancing or loss mitigation strategies, and emotional
distress."  *Bosque*, 762 F. Supp. 2d at 354.

According to the Complaint here, the Okoyes entered into a HAMP TPP with Litton and were told that "if [they] were in compliance with the trial period plan, then Litton will provide [them] with a HAMP 'Modification Agreement' that would amend and supplement the Mortgage on the Property and the Note secured by the Mortgage." (*See* Compl. ¶¶ 51-53.) The Okoyes also allege that they complied with the TPP, but, nevertheless, Litton denied modification on the pretext that the Okoyes failed to submit the requisite financial documents. (Compl. ¶¶ 54-58.) Litton's denial of the Okoyes' application for loan modification itself may not amount to unfair or deceptive practices actionable under Chapter 93A, and indeed may not even allege sufficient facts to demonstrate that any HAMP Guidelines were violated. *See Kozaryn*, 2011 WL 1882370, at *3. However, Litton's alleged representation that it would be approved for permanent modification following successful completion of the TPP is sufficient at this stage to plead an actionable Chapter 93A claim. Accordingly, I will not dismiss the claim on this ground.

### b. Violations of RESPA

Another potential limitation on Litton's Chapter 93A liability concerns any allegations of unfair or deceptive conduct premised solely upon a violation of RESPA. The case law is inconsistent as to whether a violation of RESPA alone may be a predicate for a Chapter 93A violation. Without providing any

underlying analysis, the Massachusetts Appeals Court has stated that "[n]either may chapter 93A liability be premised upon asserted violations of the Real Estate Settlement Procedures Act (RESPA), or upon either the Federal or Massachusetts Truth in Lending Acts (TILA)." *Horvath v. Adelson, Golden & Loria, P.C.*, 773 N.E.2d 478, 2002 WL 1931997, at *4 (Mass. App. Ct. Aug. 21, 2002) (unpublished table opinion) (*per curiam*). But, in *Barnes v. Fleet Nat'l Bank, N.A.*, 370 F.3d 164, 176 (1st Cir. 2004), the First Circuit held that violations of the TILA, or Truth in Savings Act, 12 U.S.C. § 4301 *et seq.*, constitute *per se* Chapter 93A violations. *See also Ording*, 2011 WL 99016, at *6–7. Other courts have denied motions to dismiss such Chapter 93A claims, noting that an act or practice violates Chapter 93A if it "violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2." 940 C.M.R. § 3.16(4). Such courts have assumed or found that RESPA is a consumer-protection statute within the meaning of § 3.16(4) and have permitted cases alleging violations of RESPA to proceed beyond the motion-to-dismiss stage. *See Martin v. TD Bank, N.A.*, No. 10-10409, 2011 WL 1599692, at *2 (D. Mass. Apr. 27, 2011) (Zobel, J.); *McDermott*, 2009 WL 1298346, at *3; *In re Holland*, No. 06-1418, 2008 WL 4809493, at *12 (Bankr. D. Mass. Oct. 30, 2008) (Feeney, Bankr. J.). Especially because the Okoyes'

allegation of RESPA violations is intertwined with allegations that Litton provided false documents and made misleading statements in relation to the Okoyes' requests for information, I decline to dismiss at this time their Chapter 93A claim insofar as it is predicated solely on RESPA violations.

### c. Bad Faith Negotiations for Loan Modification

Litton argues that the Okoyes' Chapter 93A claim based on allegations of bad faith negotiation for loan modification must fail as a matter of law. Under Massachusetts case law, absent explicit provision in the mortgage contract, once a mortgagor defaults, there is no duty to negotiate for loan modification. *See Carney v. Shawmut Bank, N.A.*, 893 N.E.2d 802, 2008 WL 4266248, at *3 (Mass. App. Ct. Sept. 19, 2008) (*per curiam*) ("While Shawmut was free to negotiate with Carney, it was under no obligation to do so, and was equally free to exercise the rights which it had acquired under the loan agreements."). The Okoyes' mortgage states: "If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law." (Litton Mot., Ex. C, ¶ 22.) As was the case in *Carney*, the mortgage document here does not obligate Litton to negotiate with the Okoyes.

However, unlike in *Carney*, Litton did undertake to negotiate
with the Okoyes and, the Okoyes allege, it was in the process of
those negotiations that Litton acted deceptively and unfairly by
withholding and changing information, providing pretextual
reasons for denying modification, and making misleading
statements regarding the process and the state of the loan. *See*
*Kattar v. Demoulas*, 739 N.E.2d 246, 257 (Mass. 2000) ("Even if
the defendants had the right to foreclose, . . . it was clearly
unfair, within the meaning of [Chapter] 93A, to use that right
for a reason so obviously against public policy." (citation
omitted)); *Latham v. Homecomings Fin. LLC*, No. SUCV2008-02100,
2009 WL 6297593, at *5 (Mass. Super. Ct. Nov. 3, 2009)
(recognizing that once the mortgagor enters into negotiations or
even forecloses lawfully, he cannot do so in bad faith). At this
stage in the litigation, therefore, the proposition set out in
*Carney* does not preclude the Okoyes' bad-faith-negotiation
assertions under Chapter 93A.

### d.  Other Allegations of Unfair Practices

Although the Okoyes' allegations against Litton under
Chapter 93A regarding loan origination cannot survive this motion
to dismiss, the Okoyes have pled sufficient allegations of
falsification of documents, uncredited payments, misleading
statements and inducements to continue making payments, failure
to notify the Okoyes of payment and interest rate increases for

nearly one year, and other similar acts to raise a colorable claim under Chapter 93A. Litton does not provide any argument as to why these claims are nonactionable under Chapter 93A, and I can find none. Thus the Okoyes may proceed with their claim against Litton insofar as it is consistent with this opinion.

### 2. Chapter 183C Claim

I must, however, dismiss all Chapter 183C claims — either standing alone or predicated upon Chapter 93A — against Litton because Litton is not subject to liability under that chapter.

Chapter 183C prohibits "[a] *lender* [from] mak[ing] a high-cost home mortgage loan . . . ." Mass. Gen. Laws, ch. 183C, § 4 (emphases added). WMC was the original lender of the loan. Thus, Litton cannot be held liable under this chapter unless the Okoyes demonstrate that Litton purchased or was assigned the loan. *See* Mass. Gen. Laws ch. 183C, § 15(a) ("Any person who purchases or is otherwise assigned a high-cost home mortgage loan shall be subject to all affirmative claims and any defenses with respect to the loan that the borrower could assert *against the original lender or broker of the loan*." (emphasis added)). The Okoyes make no such allegations. Accordingly, all Chapter 183C claims against Litton will be dismissed.

### III. MOTION FOR LEAVE TO AMEND

The Okoyes filed a motion for leave to amend the Complaint less than forty-eight hours prior to the motion hearing on the

outstanding motions to dismiss.  In additional briefing following the hearing, the defendants opposed the amendment.[13]

In the proposed amended complaint, the Okoyes add six claims against the four original defendants in this case, including the previously dismissed BNY and MERS, alleging fraud, misrepresentation, unjust enrichment, breach of contract, and violations of RESPA and the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; assert an additional claim for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* against WMC; and reallege the original Chapter 183C claim as an independent claim against all four defendants. (Mot. to Amend at 2.)  Puzzlingly, the Okoyes do not reassert their Chapter 93A claim against Litton or any other defendant, even though it was, at that time, the sole claim surviving from the original Complaint.  After reviewing the proposed amended complaint, I am satisfied that none of the proposed counts state a viable claim and, consequently, will deny leave to amend the Complaint.

## A.  Standard of Review

In general, "[t]he decision to grant a motion for leave to amend falls within the trial court's discretion." *Jaundoo v. Clarke*, 690 F. Supp. 2d 20, 27 (D. Mass. 2010) (citing *Sheehan v.*

---

[13]WMC did not submit a brief on this issue, but opposed the motion orally during the hearing.

*City of Gloucester*, 321 F.3d 21, 26 (1st Cir. 2003)).  Leave to

amend "shall be freely given when justice so requires," Fed. R.

Civ. P. 15(a), so long as there is no adequate basis for denial

such as "futility, bad faith, undue delay, or a dilatory motive

on the movant's part," *Hatch v. Dep't for Children, Youth & Their*

*Families*, 274 F.3d 12, 19 (1st Cir. 2001).  Futility alone is

"fully sufficient to justify the denial of a motion to amend."

*Id.*  In cases such as this, in which discovery is yet to be

completed and no summary judgment motion has been filed, futility

is determined by the Rule 12(b)(6) standard.  *Id.*

### B.  *Res Judicata*

Defendants BNY and MERS, both of which were previously

dismissed from this case by oral grant of their motion to

dismiss, argue that *res judicata* bars the assertion of any

additional related claims against them.  They contend that the

prior dismissal is a final judgment on the merits and that the

proposed amended complaint constitutes initiation of a improper

subsequent action against them.  Their interpretation of the

doctrine of *res judicata* is, however, without foundation.

Because the "prior judgment" upon which BNY and MERS rely is

my grant of a motion to dismiss in this case, federal law

controls the *res judicata* analysis.  *Andrews-Clarke v. Lucent*

*Techs., Inc.*, 157 F. Supp. 2d 93, 99 (D. Mass. 2001).  In order

for claim preclusion to attach under the doctrine of *res*

32

*judicata*, there must be "(1) a final judgment on the merits in an earlier action; (2) an identity of the causes of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits." *Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1165 (1st Cir. 1991) (citations omitted).

*Res judicata* is inapplicable here because there is no "final judgment on the merits *in an earlier action*." *Id.* (emphasis added). Although BNY and MERS are correct that dismissal on Rule 12(b)(6) grounds "[o]rdinarily . . . is treated as a dismissal on the merits," the First Circuit has also determined that, "[o]rdinarily, a judgment is not final unless it disposes of all claims against all parties," absent a partial final judgment following summary judgment. *AVX Corp. v. Cabot Corp*, 424 F.3d 28, 30-31 (1st Cir. 2005). In *AVX Corp.*, the First Circuit distinguished between the preclusive effect of Rule 12(b)(6) dismissals that "dispose[] of an entire complaint" from those dismissing "just a subset of the plaintiff's claims." *Id.* at 31. In fact, the First Circuit has suggested that amendment following dismissal of a complaint for failure to state a claim — but before final judgment is entered in the action — is "especially appropriate." *Hayden v. Grayson*, 134 F.3d 449, 455 (1st Cir. 1998) (quoting *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977)) (declining to decide whether an "earlier Rule 12(b)(6) dismissal amounted to a decision 'on the merits' and,

accordingly, the law of the case" precluding amendment in the same action). Accordingly, the Okoyes' proposed amended claims against BNY and MERS are not futile on *res judicata* grounds.

Nevertheless, I am satisfied that the Chapter 183C claim reasserted in a different guise in the proposed amended complaint would fail for the same reasons I originally dismissed the claim. Although not barred by *res judicata*, the claim as reasserted does not overcome the flaws of its earlier incarnation.

## C.  Sufficiency of the Pleadings

A district court may deny leave to amend a complaint as futile when the proposed amended claim alleges only conclusory statements that do not raise any viable claim. *See Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009) (citing *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009)). The First Circuit has recognized that "'. . . the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Maldonado*, 568 F.3d at 268 (quoting *Iqbal*, 129 S. Ct. at 1949). Such recitals fail to state a viable claim for relief and, as such, cannot survive a motion to dismiss. *Id.* Thus, because they would not survive a motion to dismiss, I am satisfied that to permit amendment to include the Okoyes' proposed claims of fraud, misrepresentation, unjust

enrichment, and violation of the FDCPA would be an exercise in futility.

*First*, the Okoyes' claims of misrepresentation and fraud fail to satisfy the pleadings standard laid out in *Iqbal*. The fraud count conclusorily alleges that "[d]efendants have committed fraudulent representations, actions and omission since the inception of the mortgage loan executed on October 4, 2005." (Proposed Am. Compl. ¶ 64.) Similarly, in the misrepresentation count, the Okoyes assert that "[d]efendants have made and continue to make misrepresentations as to facts relative to the instant action." (Proposed Am. Compl. ¶ 67.) According to the Okoyes, they "have been and continue to be damaged" by this fraud and misrepresentation (they do not indicate whether they allege a claim for negligent or deliberate misrepresentation). (Proposed Am. Compl. ¶¶ 65, 68.) These blanket allegations of law are precisely the kind that the Supreme Court sought to address in *Iqbal*. *See* 129 S. Ct. at 1949. Although the Okoyes allege in their briefing that Litton provided inconsistent quotes of the amount due on the loans and denied HAMP modification based on the fraudulent reason that not all documents were provided, these factual assertions are not sufficient to survive a challenge under Federal Rule of Civil Procedure 8(a), let alone the heightened pleadings requirement for allegations of fraud set out by Federal Rule of Civil Procedure 9(b). *Compare* Fed. R. Civ. P.

8(a) (requiring that a claim for relief contain "a short and
plain statement of the claim showing that the pleader is entitled
to relief . . . ."), *with* Fed. R. Civ. P. 9(b) ("In alleging
fraud or mistake, a party must state with particularity the
circumstances constituting fraud or mistake."). *See also*
*Corcoran v. Saxon Mortg. Servs., Inc.*, No. 09-114680-NMG, 2010 WL
2106179, at *5 (D. Mass. May 24, 2010) ("Under the relevant
pleading standards, Corcoran's allegations of fraud are woefully
inadequate. He does not identify with any degree of specificity:
1) the misrepresentations allegedly made by Saxon, 2) the person
or persons who made them 3) when and where they took place, 4)
their materiality, 5) his reliance on them or 6) the resulting
harm. Nor does his memorandum explain his failure to provide
those necessary elements."). Accordingly, amendment of the
Complaint to include the proposed claims of fraud and
misrepresentation would be futile.[14]

   *Second*, the Okoyes similarly fail to provide sufficient
allegations to support their claim of a violation of the FDCPA.
Indeed, the Okoyes fail to cite to a single provision of the
FDCPA that was allegedly violated by the defendants. Rather,

---

   [14]Even if these claims were sufficiently pled, they would be
foreclosed at least in part by Massachusetts's three-year statute
of limitations for tort claims. *See* Mass. Gen. Laws ch. 260,
§ 2A; *Salois v. Dime Sav. Bank of N.Y.*, 128 F.3d 20, 24 & n.4
(1st Cir. 1997). For example, any claims for misrepresentations
or fraud allegedly occurring at the origination of the mortgage
would be barred by the statute of limitations.

like many of their other claims, the FDCPA claim is based on broad generalities. The proposed amended complaint simply states: "Litton purports to act for the other Defendants in order to collect a mortgage debt. Litton has sent communications to plaintiffs claiming to collect a debt. Litton continuously and systematically refuses to show documentation regarding the debt in [*sic*] which Litton is attempting to collect." (Proposed Am. Compl. ¶¶ 80–82.) The Okoyes' briefing sheds no light on the issue, as it fails entirely to address the FDCPA claim. Consequently, such a claim cannot survive a Rule 12(b)(6) motion, and amendment would be futile.

*Third*, the breach-of-contract claim fails to satisfy even the minimal pleading requirements of Rule 8(a). The Okoyes assert that "[d]efendants have collectively and individually breached the contract between Plaintiffs and Defendants." (Proposed Am. Compl. ¶ 85.) Consequently, the Okoyes maintain, they "have been and continued to be damaged." (Proposed Am. Compl. ¶ 86.) One may assume that the contract at issue is the mortgage, or perhaps the TPP, but the specific breaches of any document and the resulting damages have not been outlined in either the claim language or in the factual section of the proposed amended complaint. Amendment of the Complaint to add this claim, therefore, would likewise be futile.

*Finally*, the Okoyes' unjust enrichment claim also fails to state a viable claim. The entirety of the Okoyes' unjust enrichment claim is that "[d]efendants have been unjustly enriched through the mortgage loan which was executed on October 4, 2005, its subsequent fees, interests, and payments received thereon." (Proposed Am. Compl. ¶ 88.) The Okoyes elaborate somewhat on this assertion in their briefing on the motion to amend, in which they argue that the defendants (namely, Litton) were unjustly enriched by "receiv[ing] payments based on erroneous loan amounts," attaching unwarranted fees, and inducing the Okoyes to make loan payments under TPP and then denying the loan modification. However, as explained more fully above, Litton was under no obligation to grant a loan modification. Furthermore, the Okoyes do not allege in the proposed amended complaint sufficient facts to outline the inappropriateness of the fees or that payments were based on an improper principal.[15]

**D. TILA Claim**

Just as the Okoyes ran into statute-of-limitations barriers

_____

[15]Even if the Okoyes had complied with the pleadings requirements as to this claim, it still would have failed to state a claim. Under Massachusetts law, the equitable claim of unjust enrichment is only available when there is no adequate remedy at law. *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005). Chapter 93A and properly pled breach-of-contract claims are appropriate legal remedies that preclude equitable relief here. *See Fernandes v. Havkin*, 731 F. Supp. 2d 103, 115 (D. Mass. 2010); *Smith v. Jenkins*, 718 F. Supp. 2d 155, 172 (D. Mass 2010).

to their Chapter 93A claim against WMC in the original Complaint, they do so again in their proposed TILA claim. The Okoyes allege that WMC violated the TILA by failing to provide copies of the mortgage, closing documents, and HUD statement within a reasonable time after the execution of the mortgage on October 4, 2005. (Proposed Am. Compl. ¶¶ 11-12, 75-78.) The Okoyes maintain that because they did not receive the documents, they did not know that they were entitled to the $71,523.23 "cash to borrower" sum. (Proposed Am. Compl. ¶¶ 12, 77.)

The statute of limitations establishes a one-year bar to all claims under TILA for money damages. 15 U.S.C. § 1640(e). When the TILA claim is "based on insufficient disclosures, the limitation period runs from the date of the transaction at which the disclosures should have been made," which here is October 4, 2005. *See Corcoran*, 2010 WL 2106179, at *3; *see also Rodrigues v. Members Mortgage Co., Inc.*, 323 F. Supp. 2d 202, 210 (D. Mass. 2004). Equitable tolling is inappropriate in this case because the Okoyes were aware — or should have been aware — of the lack of disclosure within in one year of closing. *See Corcoran*, 2010 WL 2106179, at *3 ("Although equitable tolling can rescue a TILA claim otherwise barred by the statute of limitations when the plaintiff has 'in some extraordinary way . . . been prevented from asserting his rights.'" (citations omitted)). Victor Okoye is presumed to have read the mortgage application that he signed

and in which the "cash to borrower" sum appeared.  The Okoye's
had nearly five years to realize that the more than $71,000 cited
in their application had not been disbursed and to seek relief.
They did not do so and they cannot do so now under the TILA.  To
add this claim, therefore, would be futile.

**E. RESPA Claim**

Consistent with the previously discussed proposed amended
claims, the Okoyes assert their RESPA claim using only broad
generalizations.  They cite to the RESPA statute generally, but
do not identify the provision(s) of that statute that the
defendants allegedly violated.  (*See* Proposed Am. Compl.
¶¶ 69-74.)  The proposed amendment, however, appears to raise two
purported violations: failure to provide the documentation
requested by the Okoyes by letter and failure to provide
accounting or periodic statements regarding the escrow account
connected with the loan.  (Proposed Am. Compl. ¶¶ 71-72.)

The only provision of RESPA cited by the Okoyes is 12 U.S.C.
§ 2609, which outlines lenders' and servicers' obligations
regarding escrow accounts.  The Okoyes' refer to this provision
only in passing in their briefing in response to the defendants'
opposition to the motion for leave to amend.  However, insofar as
the Okoyes' proposed amended complaint asserts a claim under

§ 2609,[16] that claim is futile. The majority of circuits that have considered suits under § 2609 have held that "no private right of action exists because 'the Secretary shall assess to the lender or escrow servicer failing to submit the statement a civil penalty.'" *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006); *see also Clayton v. Raleigh Fed. Sav. Bank*, 107 F.3d 865, 1997 WL 82624 (4th Cir. 1997) (unpublished table opinion) (*per curiam*) (holding that § 2609 does not create a private right of action); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1091 (7th Cir. 1982) (holding no implied right of action exists under § 2609); cf. *Johnson v. Washington Mut. Bank, F.A.*, 216 F. App'x 64, 66 (2d Cir. 2007) (summary order) (leaving the issue undecided but acknowledging that § 2609 may not create a private right of action); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995) (declining to decide the question but recognizing that the majority of circuits have found no private right of action). Only one circuit has found otherwise. *See Vega v. First Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918, 925 n.8 (6th Cir. 1980) (concluding that although Congress did not explicitly provide for a cause of action for violations of § 2609, Congress actually did so because it intended to create a

---

[16]Section 2609 establishes limits on how much a lender can require a borrower to deposit into an escrow account and requires servicers to provide borrowers with initial and annual statements regarding any escrow account set up in conjunction with a loan. 12 U.S.C. § 2609(a), (c).

private remedy for violations of RESPA). The First Circuit has not itself addressed this issue, although Judge Brody in the District of Maine followed the majority of the circuits in finding no private right of action under § 2609. *See Campbell v. Machias Sav. Bank*, 865 F. Supp. 26, 31 (D. Me. 1994). Given the language of § 2609, which leaves penalties for violations of this provision to the Secretary of the Treasury, I am satisfied that there is no private right of action and that this proposed amended claim is futile at least insofar as it asserts a violation of § 2609.

Next, although there is a private right of action under § 2605, the Okoyes have failed to assert a viable claim under this provision. RESPA mandates that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). And, within sixty days of receipt of a qualified written response, the servicer must make appropriate corrections or investigations and provide the borrower with a written clarification or correction. 12 U.S.C. § 2605(e)(2).

In order to make out a claim for relief under § 2605(e), the Okoyes must allege sufficient facts to "show: (1) that the servicer failed to comply with the statute's [qualified written request] rules; and (2) that the plaintiff incurred 'actual damages' as a consequence of the servicer's failure." *Anokhin v. BAC Home Loans Servicing, LLP*, No. 2:10-cv-00395-MCE-EFB, 2010 WL 5393972, at *3 (E.D. Cal. Dec. 22, 2010). In order to plead "actual damages" sufficiently, the plaintiff must allege specific damages *and* identify how the purported RESPA violations caused those damages. *See, e.g.*, *Javaheri v. JPMorgan Chase Bank, N.A.*, No. CV10-08185, 2011 WL 97684, at *5 (C.D. Cal. Jan. 11, 2011) (recognizing that withholding of information, without pecuniary and actual damages, is not sufficient to allege "actual damages" under § 2605(f)); *Torres v. Wells Fargo Home Mortg., Inc.*, No. C 10-04761, 2011 WL 11506, at *8 (N.D. Cal. Jan. 4, 2011) ("The plaintiff must include, at the pleading stage, a demonstration of some actual pecuniary loss. The plaintiff must also allege a causal relationship between the alleged damages and the RESPA violation." (citations omitted)); *Claxton v. Orlans Assocs., P.C.*, No. 10-11813, 2010 WL 3385530, at *5 (E.D. Mich. Aug. 26, 2010) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at minimum, also allege that the breach resulted in actual damages." (quoting *Hutchison v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006));

*Holland*, 2008 WL 4809493, at *9 (dismissing § 2605(e) claim
because damages were not sufficiently pled); *see also McLean v.*
*GMAC Mortg. Corp.*, No. 09-11054, 2010 WL 3784527, at *3-4 (11th
Cir. Sept. 30, 2010) (*per curiam*) (affirming summary judgment in
favor of defendants on RESPA "actual damages" claim because the
plaintiffs "offered no competent evidence demonstrating that any
of their alleged injuries were caused by the said violations");
*Eronini v. JPMorgan Chase Bank, N.A.*, 368 F. App'x 841, 842 (9th
Cir. 2010) (*per curiam*) ("The district court properly dismissed
the action because [the plaintiff] suffered no damages as a
result of the alleged RESPA violation.").

The Okoyes maintain that they sent as many as five qualified
written requests[17] for information regarding their payment
history and the amount of the remaining principal, but never
received the documentation that they requested. (Proposed Am.
Compl. ¶¶ 70-71.) They concede that Litton did respond to at
least some of those qualified requests, but allege that Litton
did not enclose the documentation listed in the letters as
enclosures. (Proposed Am. Compl. ¶¶ 34, 38, 56.) I am satisfied
that the Okoyes have sufficiently pled that they sent at least
one letter to Litton that qualifies as a qualified written

---

[17]The Okoyes allege that they sent letters qualifying as
qualified written requests on November 13, 2009, December 2,
2009, January 11, 2010, February 1, 2010, and February 14, 2010.
(Proposed Am. Compl. ¶¶ 25, 31, 38-40.)

response under the statute.   In alleging damages and causation,
however, the Okoyes return to their pattern of broad strokes.
They allege that "[d]ue to the Defendants [*sic*] willful and
malicious refusal to supply the requested documentation and
disregard of its statutory duty to supply annual accounting of
the escrow account, Plaintiffs have been and continue to be
damaged." (Proposed Am. Compl. ¶ 74.)   The damages alleged due
to the § 2605(e) violation — as opposed to any alleged § 2609
violations — are unspecified, and the Okoyes fail to address this
issue in their briefing on this motion.   (*See* Proposed Am. Compl.
¶¶ 25, 30, 31, 38–40.)   Moreover, they fail to allege any damages
suffered because they never received responses to those
particular letters.   Instead, the damages generally referred to
in the Complaint arise from fees and other charges largely
assessed prior to sending the first qualified written request to
Litton.   Therefore, the Okoyes have failed to plead a necessary
element of their § 2605(e) RESPA claim sufficiently.   *See*
*Copeland v. Lehman Bros. Bank, FSB*, No. 09cv17740-WQH-RBB, 2011
WL 9503, at *4 (S.D. Cal. Jan. 3, 2011) (dismissing a RESPA
action because conclusory allegations regarding additional fees,
legal fees, missed work, emotional distress, and revocation of
credit rating were insufficient to allege "actual damages");
*Anokhin*, 2010 WL 5393972, at *3 ("Inability to confirm detail of
Plaintiff's mortgage does not constitute real and actual

damages."); *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, No. 1:08-cv-019, 2009 WL 1748743, at *9 (N.D.N.Y. June 19, 2009) ("[A] mere demand for damages is not sufficient."); *Holland*, 2008 WL 4809493, at *10 (alleging additional fees and interest accrual is not sufficient when those amounts are not quantified). Furthermore, the Okoyes fail to plead a claim for statutory damages under § 2605(f)(1)(b) sufficiently. *See Copeland*, 2011 WL 9503, at *3 (dismissing a claim under § 2605(f)(1)(b) because the plaintiffs did not identify any experiences other than their own that demonstrate a pattern or practice of noncompliance with § 2605).

Accordingly, because the Okoyes fail to allege that they suffered any distinct damages *as a result of* Litton's alleged noncompliance with § 2605(e) of RESPA, and because the statutory damages under § 2605(f) are unavailable, I am satisfied that amending the Complaint to include this claim would be futile.

## IV. CONCLUSION

For the reasons laid out more fully above, I GRANT WMC's motion to dismiss (Doc. No. 18), DENY in part and GRANT in part Litton's motion to dismiss (Doc. No. 10), and DENY the Okoyes' motion for leave to amend the Complaint (Doc. No. 25).


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE